# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| RAYCO MANUFACTURING, INC., | ) | CASE NO. 5:17-CV-84 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| BEARD EQUIPMENT COMPANY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This indemnity action is before the Court on two motions: (1) the motion of defendant Beard Equipment Company ("Beard") for summary judgment (Doc. No. 17 ["Beard MSJ"]), and (2) the motion of plaintiff Rayco Manufacturing, Inc. ("Rayco") for partial summary judgment (Doc. No. 20 ["Rayco PMSJ"]). Rayco opposes Beard's motion for summary judgment (Doc. No. 21 ["Beard MSJ Opp'n"]), and Beard has filed a reply. (Doc. No. 24 ["Beard MSJ Reply"].) Beard, in turn, opposes Rayco's request for partial summary judgment (Doc. No. 25 ["Rayco PMSJ Opp'n"]), and Rayco has replied. (Doc. No. 26 ["Rayco PMSJ Reply"].) For the reasons that follow, Beard's motion is denied. The Court will continue to take Rayco's motion under advisement, and issue a ruling at a later time.

## I. BACKGROUND

Rayco is an Ohio corporation that is in the business of "manufacturing and selling equipment used in the forestry and landscape industry." (Doc. No. 1-1 (Complaint ["Compl."]) ¶ 1.) Beard is a Florida company that sells "construction, forestry, golf course maintenance, and mowing equipment." (*Id.* ¶ 2.) On November 7, 2006, the parties entered into a Dealership

Agreement (the "Agreement") whereby Rayco appointed Beard to serve as its exclusive dealer in the territory set forth in the Agreement. (Doc. No. 1-1 (Agreement), beginning at 17.[1])

Section 7.1 of the Agreement provides for cross-indemnification and further requires for each party to bear its own damages, costs, losses and expenses under certain circumstances:

> In consideration of the separate responsibilities of the parties in the manufacture and service of product, [Rayco] agrees to save, indemnify and hold harmless [Beard] from and against all law suits, damages, costs, losses and expenses that may be made or suffered by anyone in any manner arising out of the design and manufacture of product sold to [Beard] except as heretofore provided; [Beard] agrees to save, indemnify, and hold harmless [Rayco] from and against any and all claims, suits, damages, costs, losses, and expenses that may be made or suffered by anyone in any manner resulting from or arising out of the sale, rental, lease, modification, alteration, installation or servicing of the product by its employees or agents. Where both parties have been contributory causes to any claim, suit damages, costs, and losses and expenses each party shall bear and sustain its[] own damages, costs, losses, and expenses. The parties shall cooperate in the resolution or defense of such claims or litigation.

(*Id*. § 7.1 at 19.) The Agreement contains a forum selection clause requiring all disputes arising thereunder to be resolved by the United States District Court for the Northern District of Ohio, or if jurisdiction in this judicial district is lacking, in the state courts in Wayne County, Ohio. (*Id*. § 10.1 at 21-22.) That same provision provides that the terms of the Agreement "shall be governed by and construed in accordance with the laws of the State of Ohio[.]" (*Id*.) Finally, the Agreement provided that Beard was not Rayco's agent, and that Beard had no authority to create any obligation or responsibility on behalf of Rayco. (*Id*. § 8 at 20.)

On July 22, 2008, Josh Akridge, individually and d/b/a Hen-Ridge Dirt Works, LLC (collectively "Akridge"), filed suit against Rayco, Beard, and Beard employees, Joe Ecker

---

[1] All page number refer to the page identification number generated by the Court's electronic docketing system.

("Ecker") and Jody Bacque[2] ("Bacque"), in the Circuit Court of Clarke County, Alabama ("Alabama Action"). (Compl. ¶ 8; Doc. No. 1-1 (Alabama Complaint ["Ala. Compl."]), beginning at 32.) In his complaint, Akridge alleged that, on March 9, 2007, he purchased from Beard a forestry mower that had been manufactured by Rayco. (Al. Compl. ¶¶ 8, 9.) He claimed that during the negotiations for the mower, "defendants made many misrepresentations to [Akridge] regarding [the mower's] condition and its warranty as well as referring to the mower as a new mower when in fact it was not new and had been used as a demonstrator by several individuals and had approximately eighty (80) hours on the mower at the time of purchase." (*Id*. ¶ 10.) Akridge alleged that the mower did not operate properly, requiring him to incur substantial economic loss and repair costs. (*Id*. ¶ 12.) He raised claims against the defendants for fraud, fraudulent suppression, continuing fraud and suppression, breach of implied and express warranty, respondeat superior, breach of oral contract, and attorney's fees.

For purposes of this litigation, it is undisputed that Beard was responsible for selling the Rayco mower to Akridge. As part of the materials included with all new machines, Rayco includes manuals and a warranty registration. (Doc. No. 19-1 (Deposition of John Bowling ["Bowling Dep."]) at 654.[3]) The warranty registration notifies the purchaser that, to obtain warranty coverage, the certificate must be returned to Rayco. (Doc. No. 20-2 (Affidavit of John Bowling ["Bowling Aff."]) Ex. 2 at 809.) Rayco relies on its dealers, who are there at the point of sale, to ensure that the warranty registration certificate is completed and returned by the

---

[2] The complaint indicates that his last name is spelled "Baque," and that his last name was misspelled as "Bach" in the Alabama Action. (Compl. ¶ 8.) In the briefing, however, both sides spell Jody's last name as "Bacque."

[3] At least as late as November 2010, Bowling held the position of Vice President of Rayco. (*Id*. at 610.)

purchase. (*Id*. ¶ 7.) Akridge claimed that he was never given a manual or the registration certificate by Beard or its employees, and Beard does not dispute that a warranty registration was never returned to Rayco. (*See* Doc. No. 18-1 (Deposition of Josh Akridge ["Akridge Dep."]) at 364, 403.)

On March 29, 2010, while the Alabama Action was still pending, Rayco filed an action in the Court of Common Pleas for Wayne County, Ohio alleging that Beard had breached the terms of the Agreement by failing to defend and indemnify Rayco in the Alabama Action ("First Indemnification Action"). (*See* Doc. No. 1-2 ["Jan. 26, 2016 Ala. Order"]"] ¶ 11 at 111.) On May 3, 2010, Beard, Ecker and Bacque filed a cross-claim against Rayco in the Alabama Action, claiming that Rayco owed them indemnity pursuant to the Agreement. (*Id*. ¶ 12.)

On June 1, 2011, Akridge filed an amended pleading in the Alabama Action to include a claim under the Alabama Extended Liability Manufacturing doctrine, whereby he alleged that the mower was "defective in design and/or manufacture" making it "unreasonably susceptible to failing" and causing damage. (Doc. No. 1-1 (Second Amended Complaint ["Ala. Am. Compl."]) ¶ 61 at 56.) Rayco moved to dismiss or strike the amended pleading. (Doc. No. 1-1 (Rayco Motion to Dismiss or Strike), beginning at 58.) The Alabama state court ultimately granted the motion, finding, pursuant to Ala. R. Civ. P. 12(b)(6), that the claim failed to state a claim upon which relief could be granted. (Doc. No. 1-2 ["May 14, 2013 Ala. Order"] at 87)

The parties continued to litigate in both state forums. On August 19, 2011, the Ohio trial court granted Rayco summary judgment against Beard finding that Beard was contractually obligated to defend and indemnify Rayco under the terms of the Agreement. Beard appealed the decision, and the Alabama court stayed the Alabama Action pending resolution of the Ohio

4

appeal. (Jan. 26, 2016 Order ¶ 16 at 112.) On March 17, 2014, an Ohio appellate court reversed the Ohio trial court's grant of summary judgment to Rayco. *See Rayco Mfg., Inc. v. Beard Equip. Co.*, No. 11CA0057, 2014 WL 1350808 (Ohio Ct. App. Mar. 17, 2014). Highlighting the fact that the Agreement did not include a duty to defend, the appellate court concluded that the trial court's ruling was premature, as Rayco's right to indemnification would only ripen if and when Beard was found liable in the Alabama Action and Rayco was absolved of liability. *Id*. at *5-6, 9.[4] The Ohio appellate court went on to observe that:

> because it is not within the Ohio court's authority to determine the substantive issue of liability in the underlying Alabama case, further factual development of the issue of identification is necessary, but it can only exist upon resolution of the Alabama litigation.

*Id*. at *8. Following the Ohio appellate court ruling, the Alabama state court returned the Alabama Action to the active docket.

On October 17, 2014, Beard, Ecker, and Bacque entered into a settlement with Akridge whereby Akridge agreed to dismiss his claims against them for the sum of $90,000. (Doc. No. 20-1 (Affidavit of Andrew P. Lycans ["Lycans Aff."]), Ex. D (Release) at 750.) The *pro tantum* release did not include any acknowledgement by Beard that it was liable to Akridge. On the other hand, it specifically reserved Akridge's right to any claims against Rayco, and provided that the release of Beard and its employees was without prejudice until such time as Akridge's claims against Rayco were resolved, when the dismissal would be with prejudice. (*Id*. at 750.)

---

[4] Specifically, the court held that "[i]f Beard is ultimately found liable and Rayco is absolved from liability in the Alabama case, there is authority to allow the court in its discretion to order Beard to reimburse Rayco for its legal expenses incurred in defending itself as part of its indemnification obligation. But the plain language of the parties' agreement does not impose a duty to defend." *Id*. at *6.

On January 26, 2016, the Alabama state court entered an order resolving various motions pending before it and terminating the matter. (*See* Jan. 26, 2016 Ala. Order.) Noting that Akridge's claims against Beard and its employees had been settled, leaving only Akridge's claims against Rayco, the Alabama court ruled that these remaining claims were governed by a forum selection clause that required all claims to be litigated in Ohio.[5] (*Id*. at 114-15.) On the strength of the forum selection clause, the Alabama court dismissed the remaining claims against Rayco without prejudice on improper venue grounds. (*Id*. at 116.) In so ruling, the court observed that "[s]hould [Akridge] wish to continue pursuing [his] claims against Rayco, [he] will have to litigate in Wayne County, Ohio." (*Id*.)

Rayco filed the present action against Beard in the Wayne County Court of Common Pleas on December 22, 2016. (Doc. No. 1 (Notice of Removal) at 1.) On January 12, 2017, Beard removed the action to federal court on the basis of diversity jurisdiction. (*Id*.) The complaint raises two breach of contract claims. In Count I, Rayco seeks indemnification, under the terms of the Agreement, from Beard for costs it incurred defending the Alabama Action. Count II is supported by an allegation that Beard violated the terms of the Agreement when it and its employees actively encouraged Akridge to amend the complaint in the Alabama Action to assert a claim based upon the design or manufacture of the forestry mower. (Compl. ¶ 45 at 15.)

---

[5] The Alabama Court explained that any attempt by Rayco to seek dismissal on the basis of the forum selection clause prior to the dismissal of Ecker and Bacque would have been futile, as neither individual was a party to the Agreement. (*Id*. at 114-15.)

II. **STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable

evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

III. **DISCUSSION**

    A.    **Governing Law on Indemnity Agreements**

Indemnity "is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *Worth v. Atena Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987) (citing *Travelers Indem. Co. v. Trowbridge*, 321 N.E.2d 787, syllabus ¶ 2 (Ohio 1975)). Where the right to indemnify is contractual, the "nature of [the] indemnity relationship is determined by the intent of the parties as expressed by the language used." *Id.* (quotation marks and citations omitted). Because indemnity agreements are interpreted in the

same manner as other contracts, "[a]ll words used must be taken in their ordinary and popular sense." *Portsmouth Ins. Agency v. Med. Mut. of Ohio*, 934 N.E.2d 940, 944 (Ohio Ct. App. 2009) (quotation marks and citations omitted). Contracts, including indemnity agreements, are to be interpreted in such a way as to carry out the intent of the parties as evidenced by the language they chose to use. *See Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 544 N.E.2d 920, 923 (Ohio 1989). If the indemnity agreement is capable of two reasonable but conflicting interpretations, there is an issue of fact as to the parties' intent. *See Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 273 (Ohio 1984). However, where the language is clear, no such fact dispute exists to be determined. *State ex rel. Parsons v. Flemming*, 628 N.E.2d 1377, 1379 (Ohio 1994) (citation omitted).

The indemnity agreement at issue here provided for each party to indemnify the other based upon the nature of the claims asserted, and required the parties to each bear their own losses when liability was shared. (Agreement § 7.1 at 19.) "When an indemnitor expressly agrees to indemnify an indemnitee except in certain specified instances and it is determined that the exceptions do not pertain, then the indemnitor is obligated to indemnify the indemnitee under the terms of the agreement." *Allen v. Standard Oil Co.*, 443 N.E.2d 497, 500 (Ohio 1982).

B. **Beard's Motion for Summary Judgment and Ripeness**

It is Beard's contention that Rayco's request for indemnification is not yet ripe. The Supreme Court has characterized the ripeness analysis as an inquiry into "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n. 10, 95 S. Ct. 2197, 45 L. Ed. 2d 343 n.10 (1975). "To determine whether an issue is ripe for judicial review, the court must weigh: (1) the likelihood that the alleged harm will ever occur;

(2) the likelihood that delayed review will cause hardship to the parties; and (3) whether the factual record is sufficiently developed to provide fair adjudication." *Eagle Fireworks, Inc. v. Ohio Dep't of Commerce*, No. 03CA28, 2004 WL 232869, at *2 (Ohio Ct. App. Jan. 28, 2004) (citing *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 731-33, 118 S. Ct. 1665, 140 L. Ed. 2d 921 (1988)); *see U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 751 (6th Cir. 2003) (similar test). "Generally, a claim is not ripe if the claim rests upon 'future events that may not occur as anticipated, or may not occur at all.'" *Eagle Fireworks*, 2004 WL 232869, at *2 (quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998)).

According to Beard, without a judicial determination as to liability and damages against Beard and Rayco on Akridge's claims, "it is impossible to determine the applicability of the exceptions in the indemnity provisions in the parties' Agreement[,]" namely, the existence of possible contributory negligence. (Beard MSJ at 206.) Further, because it cannot be determined whether either party would be released from the contractual duty to indemnify without the occurrence of this future event (judicial determination), Beard insists that there is no damage. (*Id*. at 209, citing, among authority, *Metro. Life Ins. Co. v. Triskett Illinois, Inc*., 646 N.E.2d 528, 532 (Ohio Ct. App. 1994) ("To recover on a breach of contract claim, the claimant must prove not only that the contract was breached, but that the claimant was thereby damaged.") (citations omitted).) Finally, Beard claims that the likelihood that Beard would ever be found exclusively liable to Akridge is "belied by the pleadings in the Alabama" Action that raised allegations of direct fault against both Beard and Rayco. (*Id*. at 209-10.)

10

Rayco believes that Beard is still "fighting the last war" because, while this ripeness argument may have been appropriate in the First Indemnification Action, now that the Alabama Action has been dismissed, it no longer represents a winning position. (Beard MSJ Opp'n at 820.) According to Rayco, it has already been damaged in that it has been forced to incur attorney's fees defending the Alabama Action. Moreover, the extent of the injury is fully determined in that Akridge did not bring suit in Ohio and the time for initiating such a lawsuit has passed.[6] Rayco complains that if a definitive ruling from the Alabama court were necessary to determine the parties' respective indemnity obligations, then Beard's settlement and the running of the statute of limitations would mean that Rayco could never get relief. Along those same lines, Rayco insists that the facts in the Alabama Action are as developed as they are ever going to be, and that this Court (or a fact-finder) can look to the entire record to determine the respective liabilities of Rayco and Beard. Rayco has the better argument.

### 1. *The Harm to Rayco has Already Occurred*

The first prong of the ripeness test is satisfied because the alleged harm has already occurred. The Agreement does not limit the indemnitee to recovering for any award of damages it is required to satisfy, but provides that the indemnitee is to be held harmless for "all law suits, damages, costs, losses and expenses." (Agreement § 7.1 at 19.) Because the purpose of indemnity is to hold the other person harmless, and the Agreement provides for the recovery of

---

[6] It is undisputed that the Alabama complaint was filed on July 22, 2008, based upon events that occurred beginning in March 2007. (Compl. ¶ 8.) Because Akridge's claims were not tied to Rayco's written warranty, but, instead, representations by Beard and its employees, Rayco argues that Akridge would have had to bring his claims within two years under Ohio law. (Beard MSJ Opp'n at 832, citing *Lawyer's Coop. Pub. Co. v. Muething*, 603 N.E.2d 969 (Ohio 1992) ("an action based on a breach of an implied warranty without privity of contract is subject to R.C. 2305.10, the two-year statute of limitations") (citation omitted).) Moreover, while the Alabama complaint was dismissed without prejudice, Ohio's savings statute would have required that any refiled action be commenced within one year. (*Id.*, citing Ohio Rev. Code § 2305.19.) Beard offered no argument contrary to Rayco's position on the timeliness of Akridge's remaining claims.

all costs, losses and expenses, "the party seeking to enforce the terms of the indemnity agreement may be made whole by proceeding against the party who failed to abide by the terms of the agreement, and such recovery may include attorney fees." *Worth*, 513 N.E.2d at 257 (citing *Allen*, 443 N.E.2d 497, syllabus ¶ 2.) Here, Beard does not deny that Rayco has incurred expenses in the form of attorney's fees in defending the Alabama Action, and these expenses are finally determined as Beard does not dispute that the statute of limitations has run on Akridge's claims. *See, e.g., Prof'l Direct Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., LPA*, No. 2:06-CV-240, 2007 WL 3376799, at *2 (S.D. Ohio Nov. 8, 2007) ("Wiles has suffered some harm in the form of legal fees incurred in defending itself in the instant case.").

### 2. *Delaying a Determination would Significantly Prejudice Rayco*

For the same reasons, the second factor also favors a finding that the controversy is ripe. Beard's ripeness argument is premised upon the assumption that a determination of liability in the underlying tort action is necessary in order to determine the parties' respective indemnity obligations. However, because Akridge's claims against Rayco are now time-barred, there will never be another tort action where these claims will be determined. Requiring Rayco to wait indefinitely for a lawsuit that can never be filed would obviously prejudice Rayco as it would never have the opportunity to demonstrate that it is entitled to reimbursement for its costs.

Likewise, because Beard settled with Akridge without a determination of its liability, there can never be a tort action where Beard's liability for the losses can be determined. As such, in the unlikely event that Akridge was able to revive his claims against Rayco in Ohio, Beard's liability would not be determined in that action. Again, delaying indefinitely a determination of the parties' rights and duties under the Agreement would substantially prejudice Rayco as it

claims to have already incurred substantial expenses defending the Alabama Action. This factor is also satisfied.

### 3. Factual Record is Sufficiently Developed

Finally, the Court finds that the record is sufficiently developed for this Court, or, in the event of genuine issues of material fact, a fact-finder, to determine Rayco's right to indemnity. According to Beard, "[a]bsent a determination of liability and damages against Beard and Rayco on Akridge's claims, it is impossible to determine the applicability of the exceptions in the indemnity provisions of the parties' Agreement." (Beard MSJ at 206.) Because the Alabama Action was terminated without a determination as to liability as between Rayco and Beard, Beard posits that indemnification "still cannot be determined at this time." (*Id.* at 208, underlining omitted.)

However, the Agreement does not require a final court determination as to liability in an underlying tort action in order to establish a party's right to indemnification; nor does the Agreement require such a ruling before the exception that each party bear its own costs be ruled out. As to the latter, the triggering event is simply the occasion "[w]here both parties have been contributory causes of the loss[.]" (Agreement § 7.1 at 19.) The Agreement does not address how the existence of contributory negligence or responsibility is to be determined or ruled out. The dismissal of the Alabama Action does not stand in the way of this Court deciding the issue of indemnity.

For the same reason, Beard's settlement with Akridge does not serve as an impediment to resolution of the present dispute, as settlement does extinguish the right to indemnification. *See Globe Indem. Co. v. Schmitt*, 53 N.E.2d 790, 794 (Ohio 1944). While it is usually the indemnitee

who enters into a settlement and then seeks to recover the costs of the settlement from the indemnitor, the result is still the same where the indemnitor enters into a settlement with the underlying tort victim.[7] In either event, the indemnity court must determine the indemnitee's rights under the indemnity contract. *See, e.g., Bank One, N.A. v. Echo Acceptance Corp.*, 522 F. Supp. 2d 959, 971 (S.D. Ohio 2007) (citation omitted); *Portsmouth*, 934 N.E.2d at 945. In making this determination, "the Court cannot merely rely on the pleadings." *Bank One*, 522 F. Supp. 2d at 971 (citation omitted). Rather, the Court "must determine the actual liability of the parties." *Portsmouth*, 934 N.E.2d at 945. For this reason, Beard is wrong when it suggests that the pleadings in the Alabama Action alone can effectively stand as an impediment to Rayco seeking indemnification in this action. *Id*. at 946 (quoting *St. Paul Ins. Co. v. Munoz*, C.A. No. L-84-197, C.P. No. CV 83-1670, 1985 WL 8363, at *2 (Ohio Ct. App. Jan. 4, 1985) (rejecting the argument that unproven complaint allegations can defeat a right to immunity)).

Rather than relying on the pleadings in the underlying tort action, this Court must look to the entire record, including "relevant affidavits, depositions, and documentary evidence." *Bank One*, 522 F. Supp. 2d at 971 (citation omitted). For Rayco to ultimately prevail on its indemnification claim, it will need to show that Beard has a contractual duty to indemnify it for the fees incurred in the Alabama Action. *See id*. (citation omitted); *see also Portsmouth*, 934 N.E.2d at 946 (notwithstanding the fact that both the indemnitor and indemnitee settled with the underlying tort victims, the indemnitee is not precluded from "proving that it is actually liable to the injured parties and that it may look to the [indemnitor] for indemnification").

---

[7] Where it is the indemnitee that settles, to recover on an indemnity agreement, the indemnitee must prove "(1) that proper and timely notice was provided to the indemnitor, (2) 'that he was legally liable to respond,' and (3) that the settlement was fair and reasonable." *See Portsmouth*, 934 N.E.2d at 945 (quoting *Globe*, 53 N.E.2d 790 syllabus ¶ 4).

Here, the Alabama Action has concluded and the factual record is as complete as it is ever going to be. *See, e.g., Prof'l Direct*, 2007 WL 3376799, at *2 (noting that the "factual record regarding the insurance policies, timing of the claims, and interactions between [the parties] is as developed as it will ever get"). "Answers to any remaining questions regarding the factual record will be revealed in the course of the proceedings in the instant case." *Id*. (noting that the court in the declaratory judgment/indemnification action will resolve any disputed factual issues regarding the contractual right to indemnification); *see Bank One*, 522 F. Supp. 2d at 980 (where the underlying tort action does not resolve all of the facts necessary to determine the right to indemnification, it is up to the fact-finder in the indemnification action to determine those facts).

When the Ohio appellate court issued its decision in the First Indemnification Action, the Alabama Action was still active and it was reasonable to conclude that all of the facts relating to the parties' respective liabilities would be determined in that underlying tort action. The circumstances have changed. It is now clear that there will be no tort action where the parties' respective liabilities for the underlying tort injury will be resolved. Instead, it will fall to this Court to determine the factual basis for the parties' duties and rights under the Agreement. Because this matter is ripe for resolution, Beard's motion to dismiss Rayco's indemnification claim on ripeness grounds is denied.

Beard also seeks to dismiss Rayco's failure to cooperate claim maintaining that this cause of action is derivative of the "as-yet-undetermined contractual duty to indemnify" claim. (Beard MSJ at 210, capitalization omitted.) Of course, the Court has already ruled that Rayco's indemnity claim is ripe. An argument that this claim cannot be adjudicated because it relies on

15

another claim that cannot be determined at this time is unavailing for all of the reasons set forth above. Accordingly, Beard's request for summary dismissal of Rayco's failure to cooperate claim is also denied.[8]

## IV. CONCLUSION

Because the question of indemnification is ripe, Beard's motion for summary judgment is denied.

**IT IS SO ORDERED**.

Dated: February 2, 2018

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**

---

[8] In its reply brief, Beard argues for the first time that Rayco "offers not a shred of evidence to support its allegations that Beard 'actively encouraged Akridge and his counsel to amend the Alabama Complaint.'" (Beard MSJ Reply at 849, quoting Compl. ¶ 65.) While this is a proper argument on summary judgment, the Court need not consider it because "a reply brief is not the proper place to raise an issue for the first time." *Ross v. Choice Hotel Int'l, Inc.*, 882 F. Supp. 2d 951, 958 (S.D. Ohio 2012) (quotation marks and citations omitted); *see Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (issues raised in a reply brief are waived) (citations omitted).